**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

BILLY CULVER, ET AL.                                                    PLAINTIFFS

VS.                                                    CASE NO. 3:02-CV-015-M-D

KARL LEO, ET AL.                                                    DEFENDANTS

### THIRD AMENDED AND RESTATED COMPLAINT

COME NOW, the Plaintiffs, Billy Culver and Pat Culver, individually and in their capacity as employees, plan participants, and/or beneficiaries of: 1) the Group Health Care Plan ("Health Care Plan", "Welfare Plan", or "Employee Welfare Benefit Plan") of Heath Home Furnishings, L.L.C., Stratford Upholstery Company, L.L.C., and/or Simmons Upholstery Company, L.L.C.; and/or 2) the Retirement Plan ("Employee Pension Benefit Plan" or "Benefit Plan") of Heath Home Furnishings, L.L.C., Stratford Upholstery Company, L.L.C., and/or Simmons Upholstery Company, L.L.C.; on behalf of themselves and all others similarly situated and on behalf of the employee benefit plans, in the above-styled matter (hereinafter collectively referred to as the "Plaintiffs"), by and through their undersigned counsel, and hereby amend their currently pending Complaint. This Third Amended Complaint replaces and supercedes the original Complaint, and the Second Amended Complaint, and generally clarifies the E.R.I.S.A. counts to conform more closely with legal precedent, and adds a Cause of Action for civil violations of the Racketeer Influenced and Corrupt Organizations Act (RICO).

### I.     JURISDICTION AND VENUE

1.     This action is brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq., and the principles of federal common law thereunder, to

1

compel reimbursement and repayment of all losses sustained by the Employee Welfare Benefit Plan and/or Employee Pension Benefit Plan described herein (hereinafter referred to collectively as the "Employee Benefit Plans") and/or each and every participant or beneficiary of those plans. These losses pertain to: 1) the provision of and payment for insurance benefits – specifically as to health care – for current employees, retirees, and former employees of the Heath Entities and for all other beneficiaries under the Health Care Plan; and 2) the provision of and payment for retirement benefits for current employees, retirees, and former employees of Heath Home Furnishings, L.L.C., Stratford Upholstery Company, L.L.C., and/or Simmons Upholstery Company, L.L.C. and for all other beneficiaries under the Retirement Plan. Plaintiffs' rights to these benefits arise from written promises of the Defendants that include, without limitation, integral parts of Plaintiffs' employment contracts with Stratford and/or Simmons. This action asserts substantial and related claims of violations of ERISA, breach of fiduciary duty, breach of contract, false representation, and various state law claims, as a result of Defendants' conduct.

2.     The jurisdiction of this Court is invoked under and conferred by 29 U.S.C. § 1132(f), and by (a) the existence of a controversy arising under ERISA (29 U.S.C. §1332); and (b) the existence of a controversy arising under the laws of the United states (28 U.S.C. §1331).

3.     Defendants Leo, Hester, and Mr. Hunniford (hereinafter collectively referred to as the "Individual Defendants"), are, and were during the duration of the events set out herein, over the age of 19 years and are either adult residents of Union County, Mississippi, within this judicial District, or conduct business within said area, at the time of the filing of this action.

4.     Defendants ARM and Caye are, and were during the duration of the events set out herein, doing business within this judicial district.

2

5.      Many of the acts charged herein, including the violations of ERISA, occurred in this judicial district.  The acts which did not occur in this district did result in and cause harm to occur in this judicial district.

6.      Venue in this judicial district is proper pursuant to 29 U.S.C. §1132 and 28 U.S.C. §1391 (b) and (c).

## II.    THE PARTIES

7.      Plaintiff, BILLY CULVER, is over the age of nineteen (19) years and is a resident of Union County, Mississippi. He is a former employee of Heath, Stratford, and/or Simmons  with years of service at the New Albany, Mississippi, plant of Heath, Stratford, and/or Simmons.  He is and was a plan participant in and a beneficiary of the Employee Benefit Plans.

8.      Plaintiff, PAT CULVER, is over the age of nineteen (19) years and is a resident of Union County, Mississippi.  She is and was a plan participant in and/or a beneficiary of the Employee Benefit Plans.

9.      The following Plaintiffs are over the age of nineteen (19) years and are residents of the Northern District of Mississippi.  They are or were at all times relevant, plan participants in and/or beneficiaries of the Employee Benefit Plans:

(1)     Margie Bailey;

(2)     Annie Baker;

(3)     Amanda Barnes;

(4)     Joe L. Barr;

(5)     Mary Beaty;

(6)     Bruce Behrens;

3

(7)     Zelma Blackwell;

(8)     James Bowen;

(9)     John Robin Boyd;

(10)    Jeffrey Braley;

(11)    Barry Bridges;

(12)    Genette Bridgman;

(13)    Carol Brown;

(14)    Richard Bryant;

(15)    Pam Bryant;

(16)    Shirley Butler;

(17)    Ricky Cannon;

(18)    Brenda Cannon;

(19)    Jonathon Carroll;

(20)    Sandy Carwyle;

(21)    Doris Causey;

(22)    Joan Childers;

(23)    Russell "Rusty" Childers;

(24)    Michelle Clair;

(25)    Robert Clark;

(26)    Nora Clark;

(27)    Barbara Cobb;

(28)    Barbara S. Cobb;

4

(29)   Wilda Coltharp;

(30)   Constance Crayton;

(31)   Billy Culver;

(32)   Pat Culver;

(33)   Samuel Durban;

(34)   Stacy Durban;

(35)   Cathy Dye;

(36)   Jimmie Dye;

(37)   Glen Flippo;

(38)   William Gettis;

(39)   Glenda Gillespie;

(40)   Janice Goode;

(41)   Billy O. Graham;

(42)   Mary Graham;

(43)   Edward Graham;

(44)   Milton Graham;

(45)   William Graham;

(46)   Ola Graham;

(47)   Angela Griggs;

(48)   Diane Griggs;

(49)   Linda S. Hamilton;

(50)   Betty Hardin;

(51)    Clara Harrison;

(52)    Malesa Heal;

(53)    Tabitha Hill;

(54)    Jimmy Hobson;

(55)    Earl Holcomb;

(56)    Louise Honeycut;

(57)    Rosie Hudson

(58)    Patricia Jeter;

(59)    Elaine Johnson;

(60)    Patrick Johnson;

(61)    Jesse Jones;

(62)    Christine Jones;

(63)    Lisa Jordan;

(64)    Shirley Joshlin;

(65)    Calvin Keeton;

(66)    Patrick Kirby;

(67)    Dorothy Knowles;

(68)    Gladys Leatherwood;

(69)    Wanda Lewis;

(70)    Kathleen Lockridge;

(71)    Wayne Markham;

(72)    Barbara Markham;

(73)    Patricia McCullough;

(74)    Rodney McGee;

(75)    William McNeal;

(76)    Betty McNeal;

(77)    Carrol Wayne Messer;

(78)    Clara Messer;

(79)    Barbara Mills;

(80)    Frankie Montgomery;

(81)    Bobbie Ann Nix;

(82)    Charlotte Nowlin;

(83)    Oma Pannell;

(84)    Barbara Phillips;

(85)    Lance Phillips;

(86)    Bessie Posey;

(87)    Billy Powell;

(88)    Billy J. Powell;

(89)    Karen Ralph;

(90)    George W. Randle;

(91)    Jeanette Ransom;

(92)    Edna Reese;

(93)    Tony Reese;

(94)    Wilma Roaten;

7

(95)    Larry Roberts;

(96)    Bettie J. Roberts;

(97)    Edna Rodgers;

(98)    Glenda Rodgers;

(99)    Johnny Rush;

(100)   Judy Rutherford;

(101)   Lynn Simmons;

(102)   Steve Simons;

(103)   Ruby Smith;

(104)   Linda Spears;

(105)   Lottie Sprous;

(106)   Pierce Stephens;

(107)   Lenise Stricklen;

(108)   Timothy Swann;

(109)   Sonny Tate;

(110)   James Thompson;

(111)   Virginia Thompson;

(112)   Stanley Thorn;

(113)   Lionel Trice;

(114)   Larry Turner;

(115)   Danny Vernon;

(116)   Gloria Waits;

(117)   Jimmy Watson;

(118)   Kathy R. Watson;

(119)   Wanda West;

(120)   Karen Wigington;

(121)   Gail Williams;

(122)   Jacob Williams;

(123)   Sible Williams;

(124)   Carolyn Williamson;

(125)   Gabriel Wilson;

(126)   Nicky Windham;

(127)   Tina Windham; and

(128)   Virginia Wise.

10.     Defendant, KARL LEO, ("Mr. Leo"), is over the age of nineteen (19) and is a resident of or doing business in Union County, Mississippi. At all times pertinent to the actions which are the basis of this cause, Mr. Leo served as the Chief Operating Officer of Heath, Stratford, and/or Simmons.

11.     Defendant, HERB HESTER ("Mr. Hester"), is over the age of nineteen (19) and is a resident of or doing business in Union County, Mississippi. At all times pertinent to the actions which are the basis of this cause, Mr. Hester served as the Plant Manager of Heath, Stratford , and/or Simmons. Upon information and belief, he may also be an owner of, or a holder of an interest in Heath, Stratford, and/or Simmons.

9

12.     Defendant, Mr. Hunniford, is over the age of nineteen (19) and is a resident of or doing business in Union County, Mississippi. At all times pertinent to the actions which are the basis of this cause, Mr Hunniford was the named Fiduciary of the Plan of Heath, Stratford, and/or Simmons.

13.     Defendant, ARM, is, upon information and belief, an Illinois Corporation organized and existing under the laws of the State of Illinois with its principal place of business located at Arlington Heights, Illinois.

14.     Defendant, Caye Home Furnishings (hereinafter "Caye"), is, upon information and belief, a Delaware limited liability company, with its principal place(s) of business in Mississippi, is the successor to Heath, Stratford, and Simmons, and was formed in February 2002, shortly after the filing of the original Complaint in this lawsuit.

15.     Any reference herein to "Defendants" or "Individual Defendants" includes Fictitious Defendants unless clearly otherwise indicated within the context of the reference.

### III.    CLASS ALLEGATIONS

16.     Each of the named Plaintiffs is a past or present or retired employee of Heath, Stratford, and/or Simmons, or other participant or beneficiary of the Employee Benefit Plans, and as such each is entitled to the receipt of certain insurance and related welfare benefits or retirement benefits or severance benefits.

17.     The class that Plaintiffs Billy and Pat Culver seek to represent includes all those former and present, employees and retirees, as well as future employees and retirees of the New Albany, Mississippi plant of Heath, Stratford, and/or Simmons, as well as the spouses and

10

dependents and other beneficiaries and participants, and those other individuals who are, were, or will be otherwise entitled to benefits under the Employee Benefit Plans.

18.     This action is properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

   a.     The class members are so numerous that joinder of all such class members is impracticable;
   b.     There are questions of law or fact common to the Class;
   c.     The claims of Plaintiffs Billy and Pat Culver are typical of the claims of the Class;
   d.     Plaintiffs Billy and Pat Culver will fairly and adequately protect the interests of the Class;
   e.     Plaintiffs Billy and Pat Culver and the Class are represented by able counsel experienced in class action litigation;
   f.     The questions of law and fact common to the Class predominate over any questions affecting only individual class members;
   g.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy; and
   h.     Plaintiffs Billy and Pat Culver know of no difficulty that should be encountered in the management of this litigation that would preclude its maintenance as a class action.

## IV.     BACKGROUND INFORMATION AND FACTUAL AVERMENTS

19.     The Heath Entities provided for its employees, retirees and other qualified participants and beneficiaries medical coverage and benefits as well as retirement benefits under the Employee Benefit Plans in conjunction with Defendant, ARM and other persons.

20.     Defendant ARM, was responsible for administering the Health Care Benefits for employees of the Heath Entities.  Administering said plan encompasses receiving remitted funds from said employers, which are then used to pay heath care benefits.

21.     Other persons were responsible for administering the Retirement Plan for employees

11

of the Heath Entities. Administering said plan encompasses receiving remitted funds from said employers, which are then used to pay retirement benefits.

22.    At all times relevant hereto, Defendants instituted programs and made provision for health care benefits and retirement benefits for its employees. Upon information and belief, the objectives of these programs were carefully laid out and the programs themselves were thoroughly described in material and manuals published by both the Heath Entities and by Defendant, ARM. Upon information and belief, Defendants provided copies of these materials to Plaintiffs.

23.    Under the terms of the Employee Benefit Plans, the health and welfare benefits promised to the Plaintiffs included, without limitation, the following:

        (i) Health Care Benefits;

        (ii) Retirement Benefits; and

        (iii) other benefits.

24.    Upon information and belief, the objectives of the Defendants in the operation and management of the Heath Entities were set out in various publications which were provided to employees by Defendants and which were specifically endorsed by same.

25.    In the alternative, upon information and belief, in addition to the Employee Benefit Plan documents, Defendants, are parties to an Administrative Services Agreement, under which duties, obligations, and responsibilities were created in and assumed by the Defendants. Said agreement also established certain rights in the Plaintiffs.

26.    Under all of the heretofore described plans and agreements, the Individual Defendants, as well as the Heath Entities, regularly deducted from the Plaintiffs' paychecks certain amounts.

12

27.     Under all of the heretofore described plans and agreements, the express purpose of said deductions was to fund the Employee Benefit Plans.

28.     Under all of the heretofore described plans and agreements, said funds were supposed to be remitted to Defendant ARM, and other administrators of the Employee Benefit Plans, to fund these plans as heretofore described.

29.     At some point, starting in 2000, Defendants ceased remitting funds to ARM, and other plan administrators, while continuing to deduct said funds from Plaintiffs' paychecks.

30.     The failure to remit said funds eventually resulted in the loss of benefits as promised thereunder to the Plaintiffs.

31.     Throughout this entire ordeal all Defendants failed and/or refused to give any form of reasonable notice to the employees, former employees, plan participants and beneficiaries as to either the failure of the Defendants to make proper and timely payments to the Employee Benefit Plans or as to the loss of benefits under the Employee Benefit Plans.  Upon information and belief, ARM continued to administer the Health Care Plans and pre-admit Plan participants for medical care, even though the other Defendants had failed to make proper and timely payments to the Health Care Plans, with no notice to those participants and beneficiaries of loss of benefits as a result thereof.  Upon information and belief, other persons continued to administer the Retirement Plan and other Employee Benefit Plans, even though the other Defendants had failed to make proper and timely payments to the plans, with no notice to those participants and beneficiaries of loss of benefits as a result thereof.

32.     Upon information and belief, under the terms of documents and agreements listed above, the Defendants made a clear statement of their intent and acknowledgment to "divide"

13

amongst themselves various ERISA duties with regards to the administration of the Employee Benefit Plans. Upon information and belief, the administrators assumed the responsibility of providing notices to plan participants regarding any changes to the Employee Benefit Plans, or termination thereof if the "employer" fails to make such prompt notification to the participants as required by ERISA.

33. After the initiation of this original lawsuit against the Defendants and against the Heath Entities and the subsequent bankruptcy of the Heath Entities, the Individual Defendants along with several others who also are individual defendants in a similar action now pending in this Court, formed Caye Home Furnishings, and transferred all of the assets of the Heath Entities, including employees to Caye. Plaintiffs allege that Caye is a successor corporation to the Heath Entities and is liable to the Plaintiffs for all Causes of Action set out herein that the Heath Entities would otherwise be liable for.

## V. CAUSES OF ACTION

**COUNT ONE**
**BREACH OF CONTRACT**
**AGAINST ARM, CAYE, AND ALL INDIVIDUAL DEFENDANTS**

34. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of the Complaint as if fully set forth herein.

35. Plaintiffs bring this Count on behalf of themselves and all others similarly situated.

36. Under ERISA, 29 U.S.C. §1132, and the principles of federal common law developed thereunder, Defendants are obligated to fulfill their contractual obligations and promises with respect to the Employee Benefit Plans' benefits.

37. Defendants' promises of benefits in return for years of service were integral parts of

14

Defendants' employment relationship and contract with Plaintiffs.

38.     By rendering full performance, namely the proscribed time of faithful service to Defendants, Plaintiffs fully and completely satisfied their obligations.

39.     Through their control over and domination of the management, operations, administration, property, and financial decision-making affairs of the Heath Entities ; the Individual Defendants, as well as the Heath Entities (and Caye as the successor) were the employers of Plaintiffs under ERISA and federal common law, and remain liable to the employees for the Employee Benefit Plans' benefits promised by the Defendants.

40.     ARM as plan administrator for the Group Health Care Plan remains liable to the employees for the Group Health Care Plans' benefits promised by the Defendants.

41.     By failing and refusing to provide the promised benefits to which Plaintiffs were entitled, Defendants are in breach of their contract with the Plaintiffs, and are in violation of the provisions of ERISA and the federal common law arising from ERISA's preemption of state law regulation of the Employee Benefit Plans.

42.     As a result of Defendants' breach of contract, Plaintiffs have suffered, and are continuing to suffer, serious damages and irreparable injuries, including but not limited to the loss and denial of benefits, financial injury and great emotional-distress, suffering and mental anguish.

**COUNT TWO**
**BREACH OF FIDUCIARY DUTY**
**AGAINST ARM, CAYE AND ALL INDIVIDUAL DEFENDANTS**

43.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of the Complaint as if fully set forth herein.

15

44.     Plaintiffs bring this Count Two on behalf of the Plan and on behalf of themselves and all others similarly situated.

45.     Under ERISA, 29 U.S.C. §1002(21)(A) and the principles of federal common law developed thereunder, Defendants Karl Leo, Herb Hester, Phil Hunniford, Caye, and ARM are fiduciaries with respect to the Employee Benefit Plans described herein in that said Defendants (i) exercised discretionary authority or control over the management of the Employee Benefit Plans and/or the management or disposition of the Employee Benefit Plans' assets, (ii) had discretionary authority over discretionary responsibility in the administration of the Employee Benefit Plans, (iii) rendered investment advice for a fee or for compensation as to the Employee Benefit Plans assets or had the responsibility or authority to do so, and/or (iv) had the authority or responsibility to have the discretion to appoint the Employee Benefit Plans' fiduciary. Caye is a fiduciary to the extent that the Heath, Stratford and Simmons entities were fiduciaries, as it is a successor corporation liable for the original debts of the Heath, Stratford and Simmons entities.

46.     In the alternative, under ERISA, 29 U. S. C. § 1105(b) and the principles of federal common law developed thereunder, said Defendants are co-fiduciaries with respect to the Employee Benefit Plans described herein in that Defendants (i) participated knowingly in, or knowingly undertook to conceal, an act or omission of a fiduciary, knowing such act or omission is a breach; (ii) failed to comply with ERISA in their administration of specific responsibilities which said failure gave rise to or enabled a fiduciary to commit a breach; and/or (iii) had knowledge of a breach by a fiduciary and made no reasonable effort to remedy said breach.

16

### A. Breach of Exclusive Benefit Rule

47.     Under ERISA, 29 U.S.C. §1104(a)(1)(A), Defendants owe Plaintiffs and the Plan a fiduciary duty to act (i) solely in the interest of the Employee Benefit Plans' participants and beneficiaries, **and** (ii) for the exclusive purpose of providing benefits to participants, "and their beneficiaries with the care, skill, prudence and diligence of a prudent person in like circumstances."

48.     Defendants breached their fiduciary duty to Plaintiffs and the Plan by failing to discharge their duties solely in the interest of the Employee Benefit Plans' participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries; by failing to use the care, skill, prudence and diligence of a prudent person under the prevailing circumstances; and by failing to act in accordance with the Employee Benefit Plans' documents and their obligations under ERISA and the controlling federal common law thereunder.

49.     Defendants' failure to act solely in the interest of the Employee Benefit Plans' participants and beneficiaries constitutes a breach of Defendants' fiduciary duties under ERISA and the federal common law arising from ERISA's preemption of the state law regulation of Employee Benefit Plans.

50.     Defendants' conduct in failing to provide to Plaintiffs the Group Health Care and Retirement benefits to which they are entitled and in denying their claims to such benefits was willful, wanton, malicious and with complete indifference to the rights or interests of the Plaintiffs and the Plan.

51.     As a result of Defendants' breach of fiduciary duty, Plaintiffs and the Plan have suffered, and are continuing to suffer, serious damages and irreparable injuries, including but not

17

limited to the loss and denial of said benefits, financial injury and great emotional distress, suffering and mental anguish.

### B. Duty to Act Prudently

52.     Under ERISA, 29 U.S.C. §1104(a)(1)(B), Defendants owe Plaintiffs and the Plan a fiduciary duty to act for the exclusive purpose of providing benefits to participants, "and their beneficiaries with the care, skill, prudence and diligence of a prudent person in like circumstances."

53.     Defendants breached their fiduciary duty to Plaintiffs and the Plan by failing to use the care, skill, prudence and diligence of a prudent person under the prevailing circumstances, both substantively and procedurally, as obligated under ERISA and the controlling federal common law thereunder.

54.     Defendants' failure to use the care, skill, prudence and diligence of a prudent person under the prevailing circumstances, both substantively and procedurally, constitutes a breach of Defendants' fiduciary duties under ERISA and the federal common law arising from ERISA's preemption of the state law regulation of retirement benefits.

55.     Defendants' conduct in failing to use the care, skill, prudence and diligence of a prudent person under the prevailing circumstances, both substantively and procedurally, resulting in the attempt to avoid providing to Plaintiffs the Employee Benefit Plans' benefits to which they are entitled was willful, wanton, malicious and with complete indifference to the rights or interests of the Plaintiffs and the Plan.

56.     As a result of Defendants' breach of fiduciary duty, Plaintiffs and the Plan have suffered, and are continuing to suffer, serious damages and irreparable injuries, including but not

limited to the loss and denial of said benefits, financial injury and great emotional distress, suffering and mental anguish.

### C. Duty to Act in Accordance With Plan Documents and ERISA Law

57.     Under ERISA, 29 U.S.C. §1104(a)(1)(D), Defendants owe Plaintiffs and the Plan a fiduciary duty to act in compliance with the terms of the Employee Benefit Plans' documents and their obligations under ERISA and the controlling federal common law thereunder.

58.     Defendants breached their fiduciary duty to Plaintiffs and the Plan by failing to act in accordance with the terms of the Plan documents and their obligations under ERISA and the controlling federal common law thereunder.

59.     Defendants' failure to act in accordance with the terms of the Employee Benefit Plans' documents and their obligations under ERISA and the controlling federal common law thereunder  constitutes a breach of Defendants' fiduciary duties under ERISA and the federal common law arising from ERISA's preemption of the state law regulation of retirement benefits.

60.     Defendants' conduct in failing to act in accordance with the terms of the Plan documents and their obligations under ERISA and the controlling federal common law thereunder was willful, wanton, malicious and with complete indifference to the rights or interests of the Plaintiffs and the Plan.

61.     As a result of Defendants' breach of fiduciary duty , Plaintiffs and the Plan have suffered, and are continuing to suffer, serious damages and irreparable injuries, including but not limited to the loss and denial of said benefits, financial injury and great emotional distress, suffering and mental anguish.

19

#### D. Duty Not to Mislead Participants

62. Under ERISA, 29 U.S.C. § 1001 et. seq., and the principles of federal common law developed thereunder, the Defendants owe Plaintiffs and the Plan a fiduciary duty not to mislead them and an affirmative duty to disclose to Plaintiffs information regarding the Employee Benefit Plans.

63. Defendants breached their fiduciary duty to Plaintiffs and the Plan by:

(i)     deducting from the Plaintiffs' paychecks certain amounts and ceasing to remit funds to ARM, and other plan administrators.

(ii)    failing and/or refusing to give any form of reasonable notice to the employees, former employees, plan participants and beneficiaries as to either the failure of the Defendants to make proper and timely payments to the Employee Benefit Plans or as to the loss of benefits under the Employee Benefit Plans.

(iii)   Continuing to administer the Health Care Plans and pre-admit Plan participants for medical care, even though the Defendants had failed to make proper and timely payments to the Health Care Plans, with no notice to those participants and beneficiaries of loss of benefits as a result thereof.

(iv)    Continuing to administer the Retirement Plan and other Employee Benefit Plans, even though the other Defendants had failed to make proper and timely payments to the plans, with no notice to those participants and beneficiaries of loss of benefits as a result thereof.

20

64.     Defendants' above described conduct constitutes a breach of Defendants' fiduciary duties under ERISA and the federal common law arising from ERISA's preemption of the state law regulation of retirement benefits.

65.     Defendants' conduct was willful, wanton, malicious and with complete indifference to the rights or interests of the Plaintiffs and the Plan.

66.     As a result of Defendants' breach of fiduciary duty, Plaintiffs and the Plan have suffered, and are continuing to suffer, serious damages and irreparable injuries, including but not limited to the loss and denial of said benefits, financial injury and great emotional distress, suffering and mental anguish.

67.     Under ERISA 29 U.S.C. §1002(21)(A) and the principles of federal common law developed thereunder, Defendants are fiduciaries with respect to the Employee Benefit Plans described above in that Defendants exercised discretionary authority or control over the management of the plan and /or the management or disposition of plan assets.

68.     Under ERISA 29 U.S.C. §1109 the said fiduciary defendants are liable to the Plan, and the class represented by the Plaintiffs, to make the plan and all beneficiaries thereunder whole by refunding all misappropriated monies and paying the class and plan an amount equal to the to that amount by which unpaid claims exceed the disgorged monies or such other required relief as is just and proper.

69.     Under ERISA 29 U.S.C. §1132 the said fiduciary defendants are liable to the Plaintiffs and the class they seek to represent for equitable relief to redress the breaches of their fiduciary duties.

21

## COUNT THREE
## INTERFERENCE WITH PROTECTED RIGHTS
## AGAINST ARM, CAYE, AND ALL INDIVIDUAL DEFENDANTS

70.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of the Complaint as if fully set forth herein.

71.     Under ERISA 29 U.S.C. §1140 and 1141, Defendants were prohibited from intentionally interfering with the benefits to which Plaintiffs were or would be entitled as a result of Defendants' promises and from coercing Plaintiffs.

72.     Upon information and belief, Defendants interfered with the Employee Benefit Plans' benefits to which Plaintiffs were or would be entitled by coercing Plaintiffs by oral or written, express or implied, representations to Plaintiffs that Plaintiffs maintained the same level of benefits as set out under the terms of the Employee Benefit Plans, the employment agreement, and other agreements.

73.     Defendants' unlawful interference with benefits to which Plaintiffs were or would be entitled, and Defendants' coercion of Plaintiffs are in violation of the provisions of ERISA and the federal common law arising from ERISA's preemption of the state law regulation of the Employee Benefit Plans' benefits.

74.     As a result of Defendants' unlawful interference with the Employee Benefit Plans' benefits and unlawful coercion of Plaintiffs, Plaintiffs have suffered, and are continuing to suffer, serious damages and irreparable injuries, including but not limited to the loss and denial of benefits, financial injury and great emotional-distress, suffering and mental anguish.

22

**COUNT FOUR**
**PROMISSORY ESTOPPEL AGAINST**
**ARM, CAYE AND ALL INDIVIDUAL DEFENDANTS**

75.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of the Complaint as if fully set forth herein.

76.     Under ERISA, 29 U. S. C. §1001 et. seq., and the principles of federal common law developed thereunder, Defendants are prohibited from denying their promises of the Employee Benefit Plans' benefits on which Plaintiffs reasonably relied to their detriment.

77.     Defendants promised Plaintiffs over many years through written and/or oral representations, that the Defendants would provide Plaintiffs with health care and retirement benefits.

78.     Defendants intended and should have reasonably expected that these representations and promises would induce the reliance of Plaintiffs.

79.     Plaintiffs did in fact reasonably rely upon these representations made by Defendants to Plaintiffs' detriment, including decisions as to:

(i)      whether or not to contribute funds from their paychecks for said plans;

(ii)     whether to continue or terminate employment with Defendants;

(iii)    whether to forego other employment;

(iv)    whether to forego other employment after retirement;

(v)     whether to forego other means of obtaining financial security for their retirement; and

(vi)    whether to forego obtaining alternate health insurance.

23

Defendants are therefore estopped from terminating and/or otherwise altering the Employee Benefit Plans' benefits to such an extent as to materially and substantively denying Plaintiffs their reasonably expected benefits in accordance with the terms of the Employee Benefit Plans.

80.     Defendants' attempt to substantially and materially alter Plaintiffs' healthcare and retirement benefits after each Plaintiff had performed his employment obligations and acted in reliance upon Defendants' promises is a violation of ERISA and the federal common law arising from ERISA's preemption of the state law regulation of Employee Benefit Plans.

81.     As a result of Defendants' unlawful violation, Plaintiffs have suffered, and are continuing to suffer, serious damages and irreparable injuries, including but not limited to the loss and denial of said benefits, financial injury and great emotional distress, suffering and mental anguish.

**COUNT FIVE**
**FRAUDULENT MISREPRESENTATION**
**AGAINST ARM, CAYE AND ALL INDIVIDUAL DEFENDANTS**

82.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of the Complaint as if fully set forth herein.

83.     Under ERISA, 29 U. S. C. §1001 et. seq., and the principles of federal common law developed thereunder, Defendants are prohibited from (i) making fraudulent misrepresentations with respect to the Employee Benefit Plans, and from (ii) concealing information relevant to the Employee Benefit Plans.

84.     Defendants made repeated written and oral representations to Plaintiffs. These representations included:

(i)     that the Plaintiffs would have health care benefits;

24

(ii)    that the Plaintiffs would have retirement benefits;

(iii)    that the monies deducted from the Plaintiffs' paychecks would go to fund these benefits;

(iv)    employer matching contributions were being made to fund these Employee Benefit Plans;

(v)    pre-admitting Plaintiffs for health care benefits.

At some point, these representations were false.

85.    Defendants knew that each Plaintiff had the need for health care benefits and retirement benefits and were relying on said health care and retirement benefits. Defendants failed to disclose to Plaintiffs the lack of funding for the Employee Benefit Plans and that said lack of funding would or could affect their healthcare and retirement benefits.

86.    The acts of misrepresentation and concealment by the Defendants concerned material facts.

87.    The false misrepresentations and concealment were made knowingly and recklessly.

88.    Plaintiffs reasonably relied upon the misrepresentations and concealment and have suffered damages as a result thereof.

89.    Defendants' misrepresentations and concealment were made willfully, wantonly and in bad faith with the desire to deceive Plaintiffs at the expense of Plaintiffs' retirement security.

90.    As a result of Defendants' misrepresentations and concealment, Plaintiffs have been denied the benefits due them in those forms of benefits as expressly defined and created under the terms of the Employee Benefit Plans.

25

91.     Defendants' misrepresentations and concealment are in violation of ERISA and the federal common law arising from ERISA's preemption of the state law regulation of Employee Benefit Plans.

92.     As a result of Defendants' misrepresentations and concealment, Plaintiffs have suffered, and are continuing to suffer, serious damages and irreparable injuries, including but not limited to the loss and denial of said benefits, financial injury and great emotional distress, suffering and mental anguish.

**COUNT SIX**
**NEGLIGENT MISREPRESENTATION**
**AGAINST ARM, CAYE AND ALL INDIVIDUAL DEFENDANTS**

93.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of the Complaint as if fully set forth herein.

94.     Under ERISA, and the principles of federal common law developed thereunder, Defendants had a duty to exercise reasonable care and competence in communicating the Employee Benefit Plans' benefit information to Plaintiffs.

95.     Defendants, in the course of their business and administration of the Employee Benefit Plans, failed to exercise reasonable care and competence in communicating to Plaintiffs benefit information that Defendants knew or should have known would be justifiably relied upon by Plaintiffs.

96.     Defendants negligently supplied information to Plaintiffs that was false.

97.     Defendants had a financial interest in supplying the information.

98.     Defendants intended to supply the information for the benefit and guidance of the Plaintiffs.

99.     Defendants intended the information to influence the Plaintiffs in their decisions regarding employment and health care issues.

100.    Plaintiffs acted in reliance on the truth of the information supplied and were justified in relying on said information.

101.    As a result of Defendants' misrepresentations, Plaintiffs have been denied benefits due to them under the Employee Benefit Plans of the Defendants.

102.    Defendants' negligent misrepresentations are in violation of ERISA and the federal common law arising from ERISA's preemption of the state law regulation of welfare benefits, and Plaintiffs have been harmed as a proximate result thereof.

103.    As a result of Defendants' unlawful misrepresentations, Plaintiffs have suffered, and are continuing to suffer, serious damages and irreparable injuries, including but not limited to the loss and denial of benefits, financial injury and great emotional-distress, suffering and mental anguish.

## COUNT SEVEN
## WRONGFUL DENIAL OF CLAIMS AND BENEFITS
## AGAINST ARM, CAYE AND ALL INDIVIDUAL DEFENDANTS

104.    Plaintiffs reallege and incorporate by reference the preceding paragraphs of the Complaint as if fully set forth herein.

105.    Under ERISA, 29 U.S.C. §1132, Plaintiffs, as plan participants, are given the express right to "recover benefits due to [them] under the terms of [the] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." Defendants have wrongfully denied both the Plaintiffs' benefits and claims to those benefits. The

27

Defendants' denial of Plaintiffs' claims as to their respective healthcare benefits under the terms of the Plan is arbitrary and capricious and an abuse of discretion.

106.    Defendants' denial of Plaintiffs' claims for benefits is not consistent with the stated goals of the Employee Benefit Plan or of the Amendments thereto.

107.    Defendants' denial of Plaintiffs' claims for benefits renders language of the Employee Benefit Plan either meaningless or created internal inconsistencies within the Employee Benefit Plan itself.

108.    Defendants' denial of Plaintiffs' claims for benefits conflicts with the substantive and/or procedural requirements of the ERISA statute and federal common law developed thereunder.

109.    Defendants' denial of Plaintiffs' claims for benefits is contrary to the clear language of the Employee Benefit Plan.

110.    Defendants' wrongful denial of both the Plaintiffs' benefits and claims to those benefits to which Plaintiffs were or would be entitled is in violation of the provisions of ERISA and the federal common law arising from ERISA's preemption of the state law regulation of Employee Benefit Plan benefits.

111.    As a result of Defendants' wrongful denial of both the Plaintiffs' benefits and claims to those benefits, Plaintiffs have suffered, and are continuing to suffer, serious damages and irreparable injuries, including but not limited to: premium damages, claim damages, failed Plan damages, the loss and denial of said benefits, financial injury and great emotional distress, suffering and mental anguish.

## COUNT EIGHT
## CAYE HOME FURNISHINGS, LLC'S SUCCESSOR LIABILITY

112.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of the Complaint as though fully set out herein.

113.     Defendant Caye is the successor corporation to Stratford, Simmons, and Heath.

114.     Stratford, Simmons, and Heath, under the control of the Individual Defendants, transferred their assets to Defendant Caye, which was not operating before such transfer.  In fact, Caye was not created until after the filing of the original Complaint in this lawsuit.

115.     Defendant Caye retained the same employees and personnel as its predecessor corporations.

116.     Defendant Caye has continued production of the same products under the same product names as its predecessor corporations.

117.     Defendant Caye holds itself out as a continuation of the same enterprise as its predecessor corporations.

118.     Defendant Caye utilizes the same production facilities as its predecessor corporations.

119.     Defendant Caye has maintained continuity of management of its predecessor corporations.

120.     Defendant Caye is liable for the debts, obligations, and acts of its predecessors, Heath, Stratford and/or Simmons, as alleged herein, through either a de-facto merger or to the extent that Defendant Caye is a mere continuation of the original enterprises.

121.     As such, Defendant Caye is a fiduciary, an employer and a plan administrator liable to the Plaintiffs for all of the violations of ERISA as set out in previous counts in this complaint.

29

## COUNT NINE
## CIVIL RICO VIOLATIONS AGAINST KARL LEO, HERB HESTER, ARM AND PHIL HUNNIFORD

122.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of the Complaint as though fully set out herein.

123.     Plaintiffs bring this Count on behalf of themselves and all others similarly situated.

124.     Questions of law and fact common to the class members regarding the RICO counts include:

a.     Whether the RICO Defendants conducted the affairs of an enterprise through a pattern of racketeering activity as defined under RICO;

b.     Whether the RICO Defendants participated in the operation and management of an association-in-fact enterprise consisting of the Heath entities and ARM, Ltd. ("the H/ARM enterprise") and/or the RICO Defendants, with the association-in-fact consisting of:

(1)     The Heath entities, collectively;

(2)     The Heath entities and ARM, Ltd.;

(3)     The Heath entities and the collective RICO Defendants; or

(4)     A combination of any of the above.

c.     Whether the property of the Class was directly and proximately injured within the meaning of § 1964 of RICO, as a result of the RICO Defendants' racketeering activities and predicate acts consisting of a wrongful scheme intended to defraud the Class, and involving the use of the United States Mail and interstate wire services in furtherance of that scheme to disseminate to the Class certain fraudulent documents;

30

d.    Whether the RICO Defendants embezzled, stole, misappropriated or otherwise converted to their own use and benefit or to the use and benefit of another funds of the Plan;

e.    Whether the RICO Defendants made a series of unlawful monetary transactions involving funds or proceeds derived from or obtained through specified illegal activities;

f.    Whether the RICO Defendants engaged in an open-ended pattern of racketeering activity involving multiple acts of mail fraud, wire fraud and other unlawful means, with the purpose and goal of fraudulently inducing the maximum number of persons to enroll and remain enrolled in the Plan for the benefit of the RICO Defendants and/or the enterprise, and to refrain from taking steps to protect their rights to coverage;

g.    Whether the RICO Defendants and others who worked in concert with the RICO Defendants, as part of their open-ended wrongful scheme purposely misinformed and misled the Class about the misuse of Class property or funds and the results of that misuse, including the accumulation of substantial medical bills;

h.    Whether the RICO Defendants are liable to the Class for treble damages for conduct actionable under the civil provisions of RICO.

125.   Defendants Hester, Leo, ARM and Hunniford (along with Ken Hendricks, Diane Hendricks, Ken Griffin and Don Griffin, who are Defendants in the related case *Culver, et al. v. Leo, et al.,* U.S.D.C. N.D. Miss., case no. 3:04cv176-M-D. ) shall herein be collectively referred to as "the RICO Defendants."

31

126.     During the relevant time periods, the RICO Defendants used or caused to be used the United States Mail and/or wires to provide the Class with documents, including benefit guides and summaries, certificates of benefits or coverage, W-2 forms and paystubs ("the RICO Documents").

127.     The RICO Defendants knew or should have known that these documents contained misrepresentations and material omissions regarding how the RICO Defendants and/or the enterprise(s), under the direction of the RICO Defendants, wrongfully and fraudulently operated the Plan.

128.     These misrepresentations and material omissions pertain to the circumstances under which the Class will actually receive care and benefits.  These circumstances were required to be disclosed fully and accurately, and, had they been disclosed fully, would have permitted the Class to obtain different or additional coverage and/or would have permitted the Class to choose not to have premiums deducted from the Class's paychecks and obtain alternative coverage.

129.     The information the RICO Defendants and the RICO enterprise(s) failed to disclose to the Class was material in that it was likely to affect the conduct of reasonable people, likely to induce the Class to assent to pay premiums, likely to induce the Class to pay premiums through payroll deduction, likely to induce the Class to forego alternate insurance coverage, and likely to induce the Class to forego other employment opportunities.  In fact, on at least one occasion, at least one RICO Defendant and at least one representative of a RICO enterprise met with Class members to actively induce the Class to continue paying premiums for health insurance coverage through payroll deduction.

32

**Allegations Common to All RICO Sub-Counts**

**a.   The RICO Defendants are "persons" under and subject to RICO.**

130.   For purposes of RICO § 1962, the RICO Defendants are Herb Hester, Karl Leo, ARM and Phil Hunniford (along with Ken Hendricks, Diane Hendricks, Ken Griffin and Don Griffin). Each of the RICO Defendants and/or their duly authorized agents is a "person" as defined in 18 U.S.C. § 1961(3) in that each is an individual or entity capable of holding a legal or beneficial interest in property.

131.   The RICO Defendants are individuals, and, while any or all of the RICO Defendants may have been employees, officers, directors and/or members of the Heath entities, and/or may be included within the RICO enterprise(s) through their respective association-in-fact with the same, the RICO Defendants, as "persons" under RICO, are separate and distinct from the RICO enterprise(s) and the pattern of racketeering activity.

**b.   The RICO Enterprise(s).**

132.   The racketeering "enterprise(s)" as defined in 18 U.S.C. § 1961(4) are any of the following:

a.      The Heath entities, including Phil Hunniford, collectively;

b.      The Heath entities, including Phil Hunniford, and ARM, Ltd.;

c.      The Heath entities, including Phil Hunniford, and the collective RICO Defendants;

d.      ARM, Ltd. and the RICO Defendants; or

e.      A combination of any of the above.

133.   However defined as set out above, the enterprise is an ongoing, unified entity that is separate and distinct from the pattern of racketeering activity in which it engages or of which it is

33

the victim. On a continuing basis, the RICO Defendants and their agents regularly associated together, formally and informally, through routine meetings and other forms of communication, to form an identifiable group whose unified and shared purpose is to administer the enterprise(s), both for lawful and unlawful reasons, and in lawful and unlawful ways, including the collection of premiums through payroll deduction, the misappropriation or misapplication of those funds, and the administration of the Plan.

### c. The Enterprise Affects Interstate Commerce.

134. The enterprise(s) affect(s) interstate commerce in any number of ways. The Heath entities, to the extent they are components of the enterprise or, alternatively, an association-in-fact, manufacture furniture that is sold in interstate commerce, and uses components that the Heath entities receive through interstate commerce.

135. ARM, Ltd., to the extent that it is a component of the enterprise or, alternatively, an association-in-fact, is the third-party administrator for the Plan. ARM, Ltd.'s principal place of business is in Illinois, while the Heath entities operate primarily in Mississippi. ARM, Ltd., on behalf of the Heath entities, operates a PPO Plan, the health care provider members of which are primarily located in Mississippi. ARM, Ltd., is a third-party administrator for health care plans for numerous other companies in countless states.

136. The RICO Defendants, to the extent that they are members of the enterprise or, alternatively, an association-in-fact, are residents of numerous states, including, but not limited to, Mississippi, Florida, and Illinois, and at various times, have traveled via interstate commercial airline carriers during the course of their control of and/or participation in the enterprise(s).

34

**d. The RICO Defendants Have Engaged in a Pattern of Racketeering Activity.**

137.     The RICO Defendants have engaged and are currently engaging in a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(5), consisting of multiple, repeated ongoing violations of RICO § 1954, commonly referred to as "predicate acts" within the meaning of 18 U.S.C. § 1961(1).

### (1) 18 U.S.C. § 664

138.     It is unlawful, under 18 U.S.C. § 664 to "embezzle, steal or unlawfully and willfully abstract or convert to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property or other assets of any employee welfare benefit plan or employee pension benefit plan or of any funds connected therewith..."  As used in 18 U.S.C. § 664, an "employee welfare benefit plan or employee pension benefit plan" means any plan subject to Title I of ERISA.

139.     The Plan involved in this litigation is an employee welfare benefit plan within the meaning of 18 U.S.C. §664 because it is subject to Title I of ERISA.

140.     Each of the Defendant or their agents, acting at the direction of the Defendants, has repeatedly and systematically embezzled, stolen or unlawfully and willfully abstracted or converted to his own use or to the use of another,  moneys, funds, securities, premiums, credits, property or other assets of the Plan or of funds connected therewith.  These acts took place each time money for premiums was withheld from the paychecks of the Class Members and said funds were diverted away from or removed from the Plan and were not made available to provide Plan benefits.  Because these acts occurred as to each Class Member each pay period, Defendants have committed tens of

thousands of "predicate acts" through these violations of 18 U.S.C. §664 over at least a fourteen month period.

141.    This pattern of racketeering activity is related and continuous in that these tens of thousands of predicate acts all had the same or similar purposes (to profit or benefit Defendants or the Defendants' corporation); the same results (inferior or unavailable Plan benefits and the Class Members' continued consent to withholding of the premiums); the same participants (the RICO Defendants and their agents); the same victims (the Class Members); the same methods of commission (via the withholding and misappropriation of the funds); and are otherwise interrelated by distinguishing characteristics (e.g., all involve self-dealing breaches of the same duties owed to the same Plan participants) and are not isolated events.

142.    Continuity is established in a number of ways.  First, the related racketeering activity continued and extended over a substantial period of time (bi-weekly for at least fourteen months).  Second, the related racketeering activity posed and poses a distinct threat of long-term racketeering activity because it is through the commission of the related predicate acts that the Defendants administer the Plan and will continue to administer the Plan unless and until stopped.  Indeed, commission of the predicate acts has become Defendants' regular way of conducting themselves with respect to the Plan and participating in the Plan's affairs and conducting its business.

### (2) 18 U.S.C. § 1341

143.    It is unlawful, under 18 U.S.C. § 1341, to, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation,

36

security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, [place] in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or [deposit] or [cause] to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or [take] or [receive] therefrom, any such matter or thing, or knowingly [cause] to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing..."

144. Each of the RICO Defendants, or their agents, acting at the direction of the Defendants, has repeatedly violated 18 U.S.C. § 1341. These acts took place each time the Defendants or their agents used the U.S. Mail to send fraudulent communication to Class Members, including transmittal of information regarding the Plan and claims thereunder, W-2 statements indicating amounts withheld for insurance premiums, direct deposit confirmations which indicated that money was withheld from paychecks for the payment of insurance premiums and other similar and related documents.

145. This pattern of racketeering activity is related and continuous in that these thousand of predicate acts all had the same or similar purposes (to perpetuate the profiting of or benefit to Defendants or the Defendants' corporation); the same results (inferior or unavailable Plan benefits and the Class Members' continued consent to withholding of the premiums); the same participants (the RICO Defendants and their agents); the same victims (the Class Members); the same methods of commission (via the withholding and misappropriation of the funds); and are otherwise

37

interrelated by distinguishing characteristics (e.g., all involve self-dealing breaches of the same duties owed to the same Plan participants) and are not isolated events.

146.    Continuity is established in a number of ways.  First, the related racketeering activity continued and extended over a substantial period of time (at least fourteen months).  Second, the related racketeering activity posed and poses a distinct threat of long-term racketeering activity because it is through the commission of the related predicate acts that the Defendants administer the Plan and will continue to administer the Plan unless and until stopped.  Indeed, commission of the predicate acts has become Defendants' regular way of conducting themselves with respect to the Plan and participating in the Plan's affairs and conducting its business.

### (3) 18 U.S.C. §1343

147.    It is unlawful, under 18 U.S.C. § 1343, to, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice..."

148.    Each of the Defendants or their agents, acting at the direction of the Defendants, has repeatedly violated 18 U.S.C. § 1343.  These acts took place each time the Defendants or their agents used wired communications to fraudulently communicate with Class Members, including transmittal of information regarding the Plan and the status of claims thereunder, W-2 statements indicating amounts withheld for insurance premiums, the direct deposit of salary or wages out of which money was withheld from paychecks for the payment of insurance premiums and other similar and related documents.

149.     This pattern of racketeering activity is related and continuous in that these thousands of predicate acts all had the same or similar purposes (to perpetuate the profiting of or benefit to Defendants or the Defendants' corporation); the same results (inferior or unavailable Plan benefits and the Class Members' continued consent to withholding of the premiums); the same participants (the RICO Defendants and their agents); the same victims (the Class Members); the same methods of commission (via the withholding and misappropriation of the funds); and are otherwise interrelated by distinguishing characteristics (e.g., all involve self-dealing breaches of the same duties owed to the same Plan participants) and are not isolated events.

150.     Continuity is established in a number of ways.  First, the related racketeering activity continued and extended over a substantial period of time (at least fourteen months).  Second, the related racketeering activity posed and poses a distinct threat of long-term racketeering activity because it is through the commission of the related predicate acts that the Defendants administer the Plan and will continue to administer the Plan unless and until stopped.  Indeed, commission of the predicate acts has become Defendants' regular way of conducting themselves with respect to the Plan and participating in the Plan's affairs and conducting its business.

### (4) 18 U.S.C. § 1957

151.     It is unlawful, under 18 U.S.C. § 1957, to, "knowingly [engage] or [attempt] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from a specified unlawful activity...within the United States..."  For purposes of this section, a "monetary transaction" means "the deposit, withdrawal, transfer, or exchange, in or affecting interstate commerce, of funds or a monetary instrument by, through or to a financial institution..." 18 U.S.C. § 1957(f)(1).  For purposes of this section, a "specified unlawful activity"

39

is defined in the same manner as defined in 18 U.S.C. § 1956, and includes violations of 18 U.S.C. § § 664, 1341 and 1343.

152.     Each of the Defendants or their agents, acting at the direction of the Defendants, has repeatedly violated 18 U.S.C. § 1957.  These acts took place each time the Defendants or their agents withdrew the aggregate insurance premium payments from the Plan's account(s), and/or transferred such funds from the corporations' payroll accounts to any other account(s).  Defendants knew that such transactions were unlawful–those funds were clearly intended for the payment of insurance premiums rather than for the misappropriated use of the Defendants.  The funds were derived from specified unlawful activity in that the Defendants obtained control of said funds through their violations of 18 U.S.C. § § 664, 1341 and 1343 and described in this Complaint.

153.     This pattern of racketeering activity is related and continuous in that these dozens of predicate acts all had the same or similar purposes (to profit or benefit Defendants or the Defendants' corporation); the same results (inferior or unavailable Plan benefits and the Class Members' continued consent to withholding of the premiums); the same participants (the RICO Defendants and their agents); the same victims (the Class Members); the same methods of commission (via the withholding and misappropriation of the funds); and are otherwise interrelated by distinguishing characteristics (e.g., all involve self-dealing breaches of the same duties owed to the same Plan participants) and are not isolated events.

154.     Continuity is established in a number of ways.  First, the related racketeering activity continued and extended over a substantial period of time (bi-weekly for at least fourteen months).  Second, the related racketeering activity posed and poses a distinct threat of long-term racketeering activity because it is through the commission of the related predicate acts that the Defendants

40

administer the Plan and will continue to administer the Plan unless and until stopped. Indeed, commission of the predicate acts has become Defendants' regular way of conducting themselves with respect to the Plan and participating in the Plan's affairs and conducting its business.

**SUB-COUNT I**
**Violation of RICO, 18 U.S.C. § 1962(a)**

155.    Plaintiffs incorporate by reference all preceding paragraphs as though set out fully herein.

156.    At all relevant times, the RICO Defendants have invested the funds of the RICO enterprises, including the Plan, and engaged in an association-in-fact to invest the funds of the RICO enterprises, derived through a pattern of racketeering activity.

157.    Through Defendants' violation of 18 U.S.C. § 1962(a), Plaintiffs have been injured in their business and/or property, because Defendants have wrongfully invested millions of dollars which Defendants would not have realized absent the violations, and have been benefitted and enriched by millions of dollars which they otherwise would not have had. The deprivation and misappropriation of these funds resulted in a lack of insurance coverage in accordance with the Plan documents, thereby causing Plaintiffs to incur substantial medical bills that would not have otherwise been incurred, to experience waiting periods before going to other insurance Plans because of their lapse in coverage, and other similar damages. The wrongful investment of the misappropriated funds rendered such funds unavailable to the Plan and deprived Plaintiffs of the benefit of having said funds available to the Plan. Accordingly, Plaintiffs seek, pursuant to 18 U.S.C. § 1962(a), to recover threefold the damages they have sustained and the cost of suit, including a reasonable attorney's fee, and injunctive relief to prevent and restrain ongoing and future violations of RICO.

41

## SUB-COUNT II
## Violation of RICO, 18 U.S.C. § 1962(c)

158.     Plaintiffs incorporate by reference all preceding paragraphs as though set out fully herein.

159.     At all relevant times, the RICO Defendants have controlled, operated and conducted the affairs of the RICO enterprises, including the Plan, and engaged in an association-in-fact to conduct the affairs of the RICO enterprises, including the administration of the Plan, through a pattern of racketeering activity.

160.     Defendants repeatedly have assured Plaintiffs, expressly and implicitly, that they could rely on Defendants to faithfully administer the Plan in a manner that fully complies with federal law, including but not limited to, Defendants' fiduciary duties of loyalty and care, duty to administer the Plan in compliance with the terms of the Plan documents, and to devote the funds withheld for insurance premiums to the payment of premiums rather than to the benefit of Defendants.  Plaintiffs have relied on these assurances to their detriment.  Defendants' violation of 18 U.S.C. § 1962(c) have injured Plaintiffs in their business and/or property, because they have been deprived of millions of dollars which they would have realized and preserved absent the violations, and have been duped into paying Defendants millions of dollars which they otherwise would not have paid.  The deprivation and misappropriation of these funds resulted in a lack of insurance coverage in accordance with the Plan documents, thereby causing Plaintiffs to incur substantial medical bills that would not have otherwise been incurred, to experience waiting periods before going to other insurance Plans because of their lapse in coverage, and other similar damages.  Accordingly, Plaintiffs seek, pursuant to 18 U.S.C. § 1962(c), to recover threefold the damages they

42

have sustained and the cost of suit, including a reasonable attorney's fee, and injunctive relief to prevent and restrain ongoing and future violations of RICO.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Welfare Plan as a whole, pray for relief as follows:

A.  The Court declare, adjudge and decree (i) that Plaintiffs are entitled to their welfare benefits as expressly set forth and provided in the Plan and employment contract between Plaintiffs and Defendants, and (ii) that Defendants are in breach of said contract(s) with Plaintiffs.

B.  The Court declare, adjudge and decree that Defendants breached their fiduciary duties to Plaintiffs and to the welfare plan as a whole in violation of ERISA, 29 U.S.C. §1104 through their willful and/or negligent concealment and oral and written misrepresentations to Plaintiffs.

C.  The Court declare, adjudge and decree that Defendants' conduct was willful, wanton, malicious and with complete indifference to the rights and interests of Plaintiffs and the Welfare Plan as a whole.

D.  That the court declare, adjudge and decree that the Defendants make good to the welfare benefit plans, and the beneficiaries thereunder, all losses as a result of their breach of fiduciary duties pursuant to 29 U.S.C. §1109.

E.  That the court grant Plaintiffs and the class they seek to represent appropriate equitable relief to redress the violations of the Defendants breaches of their fiduciary duties pursuant to 29 U.S.C. §1132.

43

F.  The Court declare, adjudge and decree (i) that Plaintiffs justifiably relied upon Defendants' representations and omissions as to their welfare benefits and (ii) that Defendants are thereby estopped from terminating or otherwise eliminating or altering the welfare benefits as expressly promised to be provided to Plaintiffs.

G.  The Court declare, adjudge and decree that Defendants failed to solely act in the interest of the Plaintiffs and of the Welfare Plan as a whole.

H.  The Court declare, adjudge and decree (i) that Defendants unlawfully interfered with the welfare benefits to which Plaintiffs were or would have been entitled, and (ii) that Defendants unlawfully coerced Plaintiffs into taking such actions as to result in their loss of any and all welfare benefits in violation of ERISA, 29 U.S.C. §1140 and 1141.

I.  The Court issue preliminary and permanent injunctive relief requiring Defendants to resume and reinstate the welfare benefits in the immediate form of payment for health care services and retirement benefits and related expenses incurred by the Plaintiffs as promised under the express terms of the welfare Plan and to which Plaintiffs are entitled and upon which Plaintiffs reasonably relied.

J.  The Court decree such other injunctive relief and/or enter such other orders as are necessary to dissipate or relieve the effects of the aforesaid violations and wrongs, and illegal acts and conduct of Defendants.

K.  The Court award to Plaintiffs compensatory damages suffered as a result of the wrongs complained of herein including any costs incurred by Plaintiffs as a result of the termination, elimination and alteration of their welfare benefits.

44

L.  The Court award to Plaintiffs punitive and/or extra-contractual damages as provided by law.

M.  The Court award Plaintiffs the costs of suit, including reasonable attorneys fees, as provided by law.

N.  The Court award Plaintiffs and the Welfare Plan as a whole such other and further relief as the Court may deem just and equitable.

O.  That the court declare, adjudge and decree that the RICO Defendants have violated the civil portions of R.I.C.O., 18 U.S.C. §§1962(a), 1962(c) and award damages to the Plaintiffs and the class that they represent in the amount of threefold Plaintiffs' and the Class's damages, plus costs and attorney fees.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted, this the 28th day of July, 2005.

BILLY CULVER, ET AL.

BY:    s/ Matthew Y. Harris
   MATTHEW Y. HARRIS
   MS BAR NO. 99595

   EDGAR C. GENTLE, JR.
   *PRO HAC VICE*

   STERLING DERAMUS
   *PRO HAC VICE*

   JAMES M. MCMULLAN
   *PRO HAC VICE*

45

OF COUNSEL:

MATTHEW Y. HARRIS
RUTLEDGE & DAVIS, PLLC
POST OFFICE DRAWER 29
NEW ALBANY, MISSISSIPPI 38652
(662) 534-6421

STERLING L. DERAMUS
ATTORNEY AT LAW
2015 FIRST AVENUE NORTH
BIRMINGHAM, ALABAMA 35203
(205)458-1149

EDGAR C. GENTLE, III
JAMES M. MCMULLAN
GENTLE, PICKENS, ELIASON & TURNER
TWO NORTH TWENTIETH BUILDING, SUITE 1200
2 NORTH 20th STREET
BIRMINGHAM, ALABAMA 35203
(205)716-3000

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing has been served pursuant to 29

U.S.C. §1132 upon the following by placing a copy of the same in the United States Mail, Certified

Mail Return Receipt Requested  postage pre-paid and properly paid on this the 28th day of July, 2005.

The Honorable Elaine L. Chao
U.S. Secretary of Labor
200 Constitution Avenue NW
Washington, D.C. 20210

The Honorable Paul H. O'Neill
U.S. Secretary of the Treasury
1500 Pennsylvania Avenue NW
Room 3000
Washington, D.C. 20220

Hon. William K. Duke
TOLLISON LAW FIRM
Post Office Box 1216
Oxford, Mississippi 38655-1216

Hon. A. Rhett Wise
PRIEST, WISE & RUSSELL
Post Office Box 46
Tupelo, Mississippi 38802-0046

Hon. Craig M. Geno
Post Office Box 2990
Jackson, Mississippi 39207-2990

Hon. Jennifer M. Bermel
ROSSIE, LUCKET, PARKET & RIDDER, PC
1669 Kirby Parkway, Suite 106
Memphis, Tennessee 38120

Hon. Kenneth T. O'Cain
SCOTT, SULLIVAN, STREETMAN & FOX, P.C.
Post Office Box 13847
Jackson, Mississippi 39236-3847

47

Hon. Alexander A. Alston, Jr.
Bruini, Grantham, Grower & Hewes
Post Office Drawer 119
Jackson, Mississippi 39205-0119

Hon. Thomas H. Freeland, IV
P.O. Box 269
Oxford, Mississippi 38655

Hon. Mo Brooks
200 Randolph Ave., Suite 200
Huntsville, Alabama 35801

    s/ Matthew Y. Harris
MATTHEW Y. HARRIS