IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

| | | |
|---|---|---|
| BILLY CULVER and PAT CULVER, et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO.: 3:02-CV-015-MPM-JAD |
| KARL LEO, HERB HESTER, PHIL HUNNIFORD, ARM, LTD., and CAYE HOME FURNISHINGS, | ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| BILLY CULVER and PAT CULVER, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO.: 3:04-CV-176-MPM-JAD |
| KEN GRIFFIN, DON GRIFFIN, KEN HENDRICKS, and DIANE HENDRICKS, | ) ) ) ) | |
| Defendants. | ) | |

**CLAIMS ADMINISTRATOR'S REPORT TO THE COURT REGARDING WINDING UP OF THE CULVER QUALIFIED SETTLEMENT FUND AND PAYMENT OF OPT-OUT RESERVES UNDER 2.04 AND 3.02 OF THE <u>SETTLEMENT AGREEMENT</u>**

COMES NOW, the Claims Administrator of the Culver Qualified Settlement Fund (the "Fund"), and, in accordance with Federal Rule of Civil Procedure 53, and, Sections 2.04 and 3.02 of the referenced Settlement Agreement, hereby submits the following:

1. In accordance with the May 10, 2007 First Tranche Payment Order and the January 10, 2008 Second Tranche and Second Tranche Balance Payment Order, all payments authorized by this Court to qualifying Class I and Class II Claimants were issued as directed by said Orders.

2. Out of the authorized payments to Class I and Class II claimants, 169 checks were not cashed within ninety (90) days of being issued, and were, therefore, considered stale checks.

3. In an effort to resolve all outstanding stale checks, a stale check/lost-in-the-mail letter was mailed to the last known address of the payee of each respective check on May 14, 2008 for First Tranche outstanding payments, and July 11, 2008 for Second Tranche outstanding payments, giving the Class I and/or Class II Claimant 45 days to respond indicating (i) whether the check was lost in the mail and the claimant never got it; (ii) whether the Class II claimant (medical provider) is no longer in business and/or cannot be located; (iii) whether the Class II claimant (medical provider) has been paid in full; (iv) whether the Class II claimant (medical provider) refuses to endorse the check; or (v) any other reason the check was not cashed. If the Class I or Class II claimant did not respond within that 45 day period of time, the letter indicated that the claimant would be deemed to no longer want the payment and the payment would be voided. A form copy of the stale check/lost-in-the-mail letter is attached hereto as Exhibit A.

4. Once the time period had passed for response to both the First and Second Tranche outstanding checks for which we sent a stale check/lost-in-the-mail letter, we compiled the responses, and had telephone conference(s) with Counsel for the Parties to discuss how to resolve the outstanding checks. The responses and telephone conference call(s) with Counsel for the Parties

resulted in the following resolution and/or proposed resolution of the outstanding 169 checks, totaling $29,497.14:

(i) Of the 169 First and Second Tranche checks for which a stale check/lost-in-the-mail letter was sent, we did not receive a response for 47 checks. A table listing those checks, and the payees thereto, are attached hereto as Proprietary Exhibit B. As was agreed to by Counsel for both the Plaintiffs and the Defendants, those checks were voided on October 17, 2008.

(ii) Of the 169 First and Second Tranche checks for which we sent a stale check/lost-in-the-mail letter, we received a response for 74 checks indicating that the original check had been lost in the mail. As agreed to by Counsel for both Parties, those checks were reissued to the original payee with a letter explaining that the claimant had 30 days from the date of the check to cash the same, or it would be deemed that the claimant no longer wanted the check, and it would be voided. All 74 reissued checks have cleared the account as paid. A table listing those 74 checks and the reissue and cleared information is attached hereto as Proprietary Exhibit C.

(iii) Of the 169 First and Second Tranche checks for which we sent a stale check/lost-in-the-mail letter, 18 checks were returned to our office with correspondence from the Class I claimant that the Class II claimant was out of business, or that the Class I Claimant was unable to locate the Class II claimant for payment of the claim. As agreed to by Counsel for both Parties, another attempt was made by the Claims Administrator's office to locate

those Class II claimants using several internet search engines. Of the 18 checks returned, we were able to locate possible updated addresses for 10 of the payments. Correspondence was sent to the Class II claimants for those 10 payments on October 27, 2008, giving the Class II claimant until November 25, 2008 to respond confirming that the addressee was in fact the Class II claimant for which the payment was owed, and confirming the amount still owed on the respective claim. Of the 10 letters sent, we received (a) a response for two checks asking us to void the payment, and (b) a response for two checks indicating that the provider had no record of the claim. We did not receive a response regarding the other 6 payments. Attached as Proprietary Exhibit D is a table of the outstanding 18 checks, and the responses, if any, received regarding the same. With respect to these 18 checks the Claims Administrator requests, with the agreement of Counsel for both Parties, that the Court authorize the Claims Administrator to void the 18 payments and that the claims addressed by those 18 payments be deemed paid in full by this Court.

(iv) It was decided by the Claims Administrator, upon the agreement of Counsel for both Parties, that, for the remaining 30 outstanding checks of the original 169, additional correspondence would need to be sent to the claimant who returned the check for the following reasons (a) the check was returned for no reason, (b) the Class I claimant indicated that they paid the claim in full, but did not provide proof thereof, (c) the Class I claimant indicated that the

Class II claimant refused to endorse the check, or (iv) for 2 checks, the original check was remailed during the lost-in-the-mail correspondence process, and was subsequently lost. The Claims Administrator and Counsel for both Parties agreed that correspondence should be sent to the payees of these 30 checks giving them 30 days to provide the requested additional information as follows: (a) for the checks lost in the mail, a signed lost-in-the-mail certificate had to be received on or before November 13, 2008, or the checks would be voided and not reissued; (b) for the checks returned with no explanation, the payee had to provide an explanation as to the return of the check and its intended disposition on or before November 13, 2008, or the checks would be voided and not reissued; and (c) for the checks returned because the Class II was paid in full or refused to endorse the check, the Class I claimant was required to provide proof of payment by the Class I claimant of all or any of the remaining claim amount listed as owed to the Class II on or before November 13, 2008, or the checks would be voided and not reissued. The correspondence was sent as directed, and we received responses for 15 of the 30 checks, as is outlined in the attached table in Proprietary Exhibit E, with those responses resulting in the following proposed resolution of the remaining 30 outstanding checks:

(a)  We received timely responses for the 2 checks lost in the mail, and therefore the Claims Administrator requests this Court to authorize the Claims Administrator to reissue those 2 checks to be sent with

5

correspondence indicating that the claimant has 30 days to cash the check, or it will be voided, with the cashing or the subsequent voiding of the checks to be deemed to have satisfied the claim in full.

(b) We received a timely response from a Class I claimant asking us to void 2 checks as she does not have proof of payment and does not want to pursue the claim any further. We therefore request that this Court authorize the Claims Administrator to void those 2 checks with said claims to be deemed paid in full by this Court.

(c) We received a timely response from one Class I claimant providing proof that the Class I claimant had paid the Class II in full and requesting that the 1 check therefore be reissued solely to the Class I claimant. We therefore request that this Court authorize the Claims Administrator to void the original check and reissue the check to the Class I claimant solely, to be sent to the claimant with correspondence indicating that the claimant has 30 days to cash the check with said payment to constitute payment of the claim in full.

(d) We received a timely response from one Class I claimant requesting that the 1 check be reissued as originally written, as the claimant returned the check to us in error. We therefore request that this Court authorize the Claims Administrator to void the original check and reissue the check as originally written, to be sent to the claimant with correspondence indicating that the claimant has 30 days to cash the

check, or it will be voided and the claim deemed to be satisfied in full.

(e) We received a timely response from one Class I claimant providing a copy of a bill from the Class II claimant with confirmation from the Class II claimant that the Class I claimant does not owe anything on the claim. We therefore request that this Court authorize the Claims Administrator to void the 1 original check and reissue the check to the Class I claimant solely, to be sent to the claimant with correspondence indicating that the claimant has 30 days to cash the check with said payment to constitute payment of the claim in full.

(f) We received timely responses regarding 9 checks for which we requested additional information as to the proof of payment by the Class I claimant, but the Class I claimant either could not locate the proof from either the their own records or the Class II's records, or the Class I simply made the statement that the bill was paid in full, but did not provide proof of said payment. After consultation with Counsel for both Parties, the Claims Administrator, with the agreement of Counsel for both Parties, requests that this Court authorize the Claims Administrator to void these 9 checks with said claims to be deemed paid in full by this Court.

(g) With respect to the 15 checks for which a response was not received to the correspondence sent by the Claims Administrator asking for the

required additional information, the Claims Administrator, with the agreement of Counsel for both Parties, requests that this Court authorize the Claims Administrator to void these 15 checks with said claims to be deemed paid in full by this Court.

5. In summary, of the 169 original stale checks, totaling $29,497.14, (i) the Claims Administrator has reissued 74 checks that were originally lost in the mail, all of which have now cleared the account; (ii) 47 checks have been voided, based on agreement by Counsel for both Parties, due to no response to the stale check correspondence; (iii) the Claims Administrator requests that this Court authorize him to void 43 of the outstanding checks, and therefore deem the claims paid in full, due to the fact (a) the Class II is missing or requested the checks be voided, (b) the Class I claimant requested the checks be voided, or (c) the Class I claimant failed to provide proof of payment of the claim by the Class I claimant; and (iv) the Claims Administrator requests that this Court authorize him to void 5 original checks and reissue the checks as set out more fully above, giving the claimants 30 days to negotiate the checks or the checks will be voided, with the cashing of the check or the subsequent voiding of the payment to be deemed to satisfy the claim in full.

6. Set forth in Exhibit F is an accounting of the balance of the Culver Qualified Settlement Fund Claimant and Expense Account and the Culver Qualified Settlement Fund Investment Account as of November 30, 2008. The total, on a cash basis, in the Culver Qualified Settlement Fund's Claimant and Expense Account and Investment Accounts as of November 30, 2008, equals $41,011.14. The Opt-Out Reserve Account balance as of November 30, 2008, equals $73,149.09. In an effort to efficiently wrap up the Culver Qualified Settlement Fund and to reduce administrative expenses with respect to the year end and final accounting of the Culver Qualified

Settlement Fund, the Claims Administrator proposes that the total balance of the Culver Qualified Settlement Fund Claimant and Expense Account, and Investment Account, after the 43 checks totaling $22,260.06 above have been voided if so approved by this Court, be transferred to the Trust account of the Claims Administrator, minus any outstanding banking fees and expenses, to (i) reissue the 5 checks totaling $2,574.23 to be reissued as addressed above, if approved by this Court, and (ii) pay out the remaining funds, upon the resolution of the 5 remaining checks above, as requested by the Claims Administrator herein below.

7. Set forth in Exhibit G is the Claims Administrator's invoice for services rendered and expenses incurred through November 30, 2008, and totaling $99,873.12. The Claims Administrator, in agreement with Counsel for both Parties, requests that this Court authorize the Claims Administrator to pay any remaining Culver Qualified Settlement Funds in the Claims Administrator's Trust Account, after the payment of the 5 reissued checks and totaling $2,574.23 as addressed above, if so approved by this Court, as follows: (i) ½ to the Claims Administrator in full satisfaction of the Claims Administrator's outstanding invoice for services rendered and expenses incurred; and (ii) the remaining ½ to be paid to the Trust Account of the Defendants' Counsel Butler, Snow, O'Mara, Stevens & Cannada PLLC, for distribution among the Defendants as they determine.

8. With respect to the Opt-Out Reserve, this Court previously approved by Final Order and Judgment dated August 2, 2007, the Settlement Agreement between the Parties which created therein in Section 2.04 an Opt-Out Reserve to be held by the Fund to pay out, upon written instructions from the Defendants to the Plaintiffs' Counsel, claims made by opt-out claimants.

9. Section 2.04 of the Settlement Agreement stated that the Opt-Out Reserve Account, which totals $73,149.09 as of November 30, 2008, would be held for two (2) years following the date of the Final Order and Judgement, unless terminated earlier by agreement of the Parties.

10. Section 2.04 of the Settlement Agreement stated further that upon the termination of the Opt-Out Reserve,

> if the amount of allowed Class Member claims was not paid in full by the QSF, the remaining balance of the Opt-Out Reserve, to the extent necessary to pay allowed but unpaid Class Member claims, shall be distributed ratably to Class Members in proportion to their allowed claim amount, unless the amount of the Opt-Out Reserve is too small to make such payments practicable, in which case it shall be paid in accordance with the agreement of the Parties or a Court Order. If, however, the QSF has paid in full all allowed Class Member claims, or if not all of the Opt-Out Reserve is needed to pay the balance of allowed but unpaid Class Member claims, then the balance of the Opt-Out Reserve remaining shall be returned to the Defendants in accordance with §3.02.

11. Section 3.02 of the Settlement Agreement sets out how the remaining funds (the Opt-Out Reserve and the funds used to pay claimants) shall be returned to the Defendants in proportion to each Defendants funding of the Fund.

12. The Claims Administrator, in his December 17, 2007 submission to the Court regarding the Second Tranche Payout, informed the Court and the Parties that the Fund had sufficient funds to pay out all allowed Class Member claims in full.

13. The Defendants, in light of the above, have requested that the Opt-Out Reserve be paid out to Butler, Snow, O'Mara, Stevens & Cannada PLLC, Counsel for Defendants, to be held in their Trust Account, until said time as the money can be distributed to the Defendants in accordance with Section 2.04 and 3.02 of the Settlement Agreement.

WHEREFORE, PREMISES CONSIDERED, the Claims Administrator respectfully requests the following relief:

1. That this Report lie over for seven (7) days for possible objections from Counsel for the Parties;

2. Absent objections, that the Court issue an Order

   (i) approving the Claims Administrator's reissuance of the 74 checks for which a completed lost-in-the-mail certificate was received indicating the original check had been lost or misplaced;

   (ii) approving the Claims Administrator's voiding of the 47 checks for which no response was received from claimants to the stale check/lost-in-the-mail correspondence, with said claims to be deemed paid in full;

   (iii) authorizing the Claims Administrator to void the 43 checks addressed above, with the claims deemed to be paid in full, due to the fact that (a) the Class II is missing or requested the checks be voided, (b) the Class I claimant requested the checks be voided, or (c) the Class I claimant failed to provide proof of payment of the claim by the Class I claimant;

   (iv) authorizing the Claims Administrator to transfer the balance of the Culver Qualified Settlement Fund Claimant and Expense Account and the Culver Qualified Settlement Fund Claimant Investment Account to the Claims Administrator's Trust Account for distribution, and that the Claims Administrator close the Culver Qualified Settlement Fund Claimant and

    Expense Account and Investment Account and prepare a final income tax return for same, if required;

(v) authorizing the Claims Administrator to reissue the 5 claimant checks, as addressed above, out of the Claims Administrator's Trust account;

(vi) authorizing the Claims Administrator to pay the remainder of the Culver Qualified Settlement Funds in the Claims Administrator's Trust Account, after the reissuance and resolution of the 5 checks addressed above, ½ to the Claims Administrator as payment of fees and expenses, and ½ to Defendants' Counsel Butler, Snow, O'Mara, Stevens & Cannada PLLC, for distribution among the Defendants as they determine; and

(vii) authorizing the Claims Administrator to pay the Opt-Out reserve to Butler, Snow, O'Mara, Stevens & Cannada PLLC, Counsel for Defendants, to be held in their Trust Account, until said time as the money can be distributed to the Defendants in accordance with Section 2.04 and 3.02 of the Settlement Agreement.

3. For such other, general, more equitable or appropriate relief as is proper under the premises.

Respectfully submitted this 19th day of December, 2008.

                    _/s/ Edgar C. Gentle, III_
                    Edgar C. Gentle, III
                    Claims Administrator

OF COUNSEL:
GENTLE, PICKENS & TURNER
Suite 1200
2 North 20th Street
Birmingham, Alabama 35203
Phone: (205) 716-3000
Fax:   (205) 716-3010